STATE OF NORTH CAROLINA v. VERLON T. SPILLARS

No. 72

(Filed 28 January 1972)

1. Robbery § 2— indictment — ownership of property taken

An indictment for robbery will not fail if the description of the property is sufficient to show it to be the subject of robbery and to negate the idea that the accused was taking his own property.

2. Indictment and Warrant § 17; Robbery § 4— armed robbery — ownership of property taken — variance

There was no fatal variance where the indictment charged an armed robbery in which money was taken from "Ice Service Store, a corporation," and the evidence showed that the name of the company was "Ice Service, Incorporated," it not being necessary that the ownership of the property be laid in a particular person in order to allege and prove armed robbery.

3. Searches and Seizures § 3— affidavit for search warrant — evidence before magistrate

It is not necessary that an affidavit for a search warrant contain all the evidence properly presented to the magistrate.

4. Searches and Seizures § 3— affidavit for search warrant — evidence before magistrate

The requirement of G.S. 15-26(b) that the affidavit for a search warrant indicate the basis for the finding of probable cause does not impose a duty upon the magistrate to transcribe all the evidence before him supporting probable cause.

5. Searches and Seizures § 3— search warrant — incompetent information in affidavit

A valid search warrant may be issued on the basis of an affidavit containing information which may not be competent as evidence.

6. Searches and Seizures § 3— search warrant — affidavit based on hearsay

An affidavit for a search warrant may be based on hearsay information if the magistrate is informed of the underlying circumstances upon which the informant bases his conclusion as to the whereabouts of the articles and the underlying circumstances upon which the officer concluded that the informant was credible.

7. **Searches and Seizures § 3— probable cause to issue search warrant — sufficiency of evidence before magistrate**

There was sufficient evidence before the magistrate, including the officer's affidavit and testimony, to establish probable cause for the issuance of a warrant to search for money taken in an armed robbery and articles used in connection with the robbery.

8. **Searches and Seizures § 3— search warrant — presumption of regularity**

A search warrant will be presumed regular if irregularity does not appear on the face of the record.

9. **Searches and Seizures § 3— attachment of affidavit to warrant — presumption of regularity of warrant**

Defendant failed to rebut the presumption of regularity of the search warrant, and his contention that the warrant was irregular in that the affidavit was not attached to the warrant as required by G.S. 15-26(b) is without merit, where the only evidence offered by defendant in support of his contention was the statement obtained on cross-examination of a police officer that the officer did not see the affidavit at the time another officer read and served the warrant.

10. **Criminal Law § 84; Searches and Seizures § 3— validity of warrant and search — question for court**

The validity of a search warrant, the legality of a search, and the admissibility of evidence obtained by the search are not questions for the jury but are matters of law to be determined by the trial judge.

11. **Criminal Law § 73; Searches and Seizures § 3— admission of search warrant and affidavit — hearsay evidence**

It is error to admit in evidence a search warrant together with the affidavit to obtain the warrant because the statements and allegations contained in the affidavit are hearsay statements which deprive the accused of his right of confrontation and cross-examination.

12. **Criminal Law § 34— evidence of other offenses**

In a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent or separate offense.

13. **Criminal Law § 158; Evidence § 28— admission of documents — presumption that contents shown to jury**

It is presumed that the contents of documents admitted into evidence were made known to the jury.

14. **Criminal Law § 34; Searches and Seizures § 3— admission of affidavit for search warrant — evidence of another crime — prejudicial error**

The trial court in an armed robbery prosecution committed prejudicial error in the admission of a search warrant and the accompanying affidavit where the affidavit contained hearsay statements indicating defendant's complicity in another crime without showing that he had been convicted of that crime.

APPEAL by defendant from *Bowman, S.J.,* 1 February 1971 Criminal Session of BUNCOMBE Superior Court.

Defendant was tried on a bill of indictment charging him with armed robbery.

The State offered evidence, in substance, as follows:

Mrs. Florence Browning testified that she and Mrs. Katie Stepp were working in the Black Mountain Ice Service Store on the evening of 10 December 1970. Upon returning from the stockroom around 9:45 that evening, she saw a tall slender man enter the store. He wore a blue-green or blue-grey jacket, blue jean-type denim dungarees, brown gloves, and tan shoes with gold buckles. Two ladies' nylon stockings covered his head and neck. He pointed a small pistol at the ladies and ordered Mrs. Browning to lie on the floor, and at his direction Mrs. Stepp opened the cash register and gave him the contents except for some pennies. He ran from the store after ordering Mrs. Stepp to lie on the floor. Mrs. Browning could not identify the defendant as the man who came into the store and took the money.

David Crisp testified that he lived across the street from the Black Mountain Ice Service Store. David drove a school bus, which he parked at night in the parking lot beside the Ice Service Store. On 10 December 1970 he was upstairs in his home observing his school bus and the parking lot, hoping to discover who had been stealing gasoline from the school bus. Sometime after 9:30, he saw a light blue Chevrolet automobile pull into the parking lot, stop for a few minutes and drive off. The car returned moments later, cut its lights, and drove into the darkened area of the parking lot near the school bus. David proceeded to investigate. As he approached the school bus he saw someone tall and slender come around the corner of the store carrying a bag. This person drove off in a light blue Chevrolet. David could not identify the defendant as the man who drove off. He did not see the rear of the vehicle as it departed.

Oscar Crisp, David's father, testified that he stood in the doorway of his home and watched his son go over to the parking lot. He saw a light blue Chevrolet pull out of the parking lot of the Ice Service Store and drive away. One of the left rear taillights of this vehicle was broken out, leaving a place through which a white light was shining.

Deputy Sheriff Charles Medford testified that he stopped a light blue 1965 model Chevrolet between 12:30 and 12:45 a.m. on 11 December 1970. One of the left rear taillights was broken out. He stopped this vehicle some thirteen miles from the Ice Service Store in Black Mountain. Mrs. Louise Owens was driving the vehicle and defendant was sitting in the right-hand front seat. Mrs. Owens stated to Deputy Medford that she and defendant were going to the Hot Shot in Biltmore to get something to eat.

Mrs. Louise Owens testified that prior to 1 December 1970 she and her five children had been living for some eight weeks with defendant in his trailer at Enka, North Carolina. On 10 December 1970 around 8:00 o'clock p.m., defendant told her that he was going to get some cigarettes and to his mother's home to borrow some money. He left in her 1965 light blue Chevrolet and returned between 11:00 and 11:30 p.m. At that time he was wearing blue jeans and a blue shirt. Upon his return he gave her children some change and talked to them about going to Florida during the Christmas holidays. He then changed clothes and she and defendant left to go to the Hot Shot to get something to eat. On the way to the eating place they were stopped by Deputy Sheriff Medford. At that time the left taillight was out on her car. On the next day she and defendant went shopping for groceries and Christmas presents.

Eugene Owens, the 14-year old son of Mrs. Louise Owens, testified that he was living with his mother in defendant's trailer on 10 December 1970. On that day defendant returned to the trailer between 11:00 and 11:30 p.m. and poured some change out onto a bar in the kitchen. Defendant gave Eugene a $50 bill and told him that the money was his Christmas present. Defendant had been wearing a green jacket when he left earlier in the evening.

Douglas Carver, owner of the Ice Service Store, testified that his audit of the cash register showed that $102.75 was missing. The corporate name of his business was Ice Service, Incorporated.

Defendant offered no evidence.

The jury returned a verdict of guilty of armed robbery. Defendant appealed from judgment imposing a prison sentence of 25 to 30 years.

This case is before us pursuant to our general referral order effective 1 August 1970.

*Attorney General Morgan and Assistant Attorney General Richmond for the State.*

*Hendon & Carson, by George Ward Hendon, for the defendant.*

BRANCH, Justice.

Defendant assigns as error the failure of the trial judge to grant his motion for nonsuit.

[1, 2]   The indictment charges that defendant "unlawfully . . . and feloniously . . . with the use and threatened use of firearms, . . . to wit: small hand pistol whereby the life of Mrs. Katie Stepp was endangered and threatened, did . . . steal and carry away money of the value of $103 from the presence, person, place of business, Ice Service Store, a corporation, . . ." The manager of the corporation testified that the corporate name of the company was "Ice Service, Incorporated." In support of his contention that this was a fatal variance between the indictment and the evidence, defendant cites *State v. McKoy,* 265 N.C. 380, 144 S.E. 2d 46. *McKoy* relates to an arrest of judgment on a charge of larceny where there was no allegation of ownership of the money allegedly stolen. It is true that a fatal variance results in larceny cases where title to the property is laid in one person by the indictment and proof shows it in another. *State v. Law,* 227 N.C. 103, 40 S.E. 2d 699; *State v. Weinstein,* 224 N.C. 645, 31 S.E. 2d 920. However, it is not necessary that ownership of the property be laid in a particular person in order to allege and prove armed robbery. The gist of the offense of robbery is the taking by force or putting in fear. An indictment for robbery will not fail if the description of the property is sufficient to show it to be the subject of robbery and negates the idea that the accused was taking his own property. *State v. Rogers,* 273 N.C. 208, 159 S.E. 2d 525; *State v. Guffey,* 265 N.C. 331, 144 S.E. 2d 14; *State v. Sawyer,* 224 N.C. 61, 29 S.E. 2d 34.

The trial judge properly overruled defendant's motion for nonsuit.

Defendant strongly contends that the trial judge committed prejudicial error by admitting into evidence the property seized

under the search warrant and by allowing into evidence testimony concerning the seized property. He specifically alleges (1) that the statements in the affidavit to obtain the search warrant were not sufficient to allow the magistrate to find probable cause for the issuance of the search warrant, (2) the affidavit was not attached to the search warrant pursuant to G.S. 15-26 (b), and (3) the search warrant failed to describe with reasonable certainty the premises or the objects sought, and that reference to the affidavit did not cure this defect since it was not attached to the search warrant. We first quote portions of applicable statutory law, and will then consider each of these contentions in numerical order.

AFFIDAVIT FOR SEARCH WARRANT:

G.S. 15-25 (a) provides:

Any . . . magistrate of the General Court of Justice may issue a warrant to search for any contraband, evidence or instrumentality of crime upon finding probable cause for the search.

G.S. 15-26 provides:

(a) The search warrant must describe with reasonable certainty the person, premises, or other place to be searched and the contraband, instrumentality, or evidence for which the search is to be made.

(b) An affidavit signed under oath or affirmation by the affiant or affiants and indicating the basis for the finding of probable cause must be a part of or attached to the warrant.

(c) The warrant must be signed by the issuing official and bear the date and hour of its issuance above his signature.

G.S. 15-27 provides:

(a) No evidence obtained or facts discovered by means of an illegal search shall be competent as evidence in any trial.

(b) No search may be regarded as illegal solely because of technical deviations in a search warrant from requirements not constitutionally required.

Were sufficient facts before the magistrate to establish probable cause for the issuance of the search warrant?

The affidavit executed by Officer Roland and the search warrant issued by the magistrate appear in the record as follows:

C. W. ROLAND, Deputy Sheriff, Buncombe County, being duly sworn and examined under oath, says under oath that he has reliable information and reasonable cause to believe that VERLON SPILLARS and LOUISE SAMS OWENS, have on their premises, on their persons, and in an automobile registered in the name of Louise Sams Owens certain property, to wit: instrumentalities and fruits of crimes committed on December 10, 1970, that is to say, stockings used to cover the face, articles of clothing, shoes, small short barrelled hand gun, money, letters pertaining to the crime, which were used in the commission of a felony, to wit: Armed Robbery, committed on the 10th day of December, 1970, at the following places: (1) Ice Service Store in Black Mountain; (2) Ice Service Store in Enka, North Carolina. The property described above is located on the premises, in the vehicle, and on the persons of Verlon Spillars and Louise Sams Owens described as follows:

PREMISES: Two bedroom house trailer located at 394A Asbury Road on the North side of the road, white and green in color, 12 feet by 55 feet in dimensions, down a dirt road, 1/4 mile from Asbury Road in front of Enka High School, in Enka, N. C.

AUTOMOBILE: 1965 Chevrolet Impala, light blue in color, two door, license number, N. C. 1970, BE-6575, with broken left rear tail light.

PERSONS: Verlon Spillars, and Louise Sams Owens.

The facts which establish reasonable grounds for issuance of a Search Warrant are as follows:

(1) Mr. Oscar Crisp, Old U. S. 70, Black Mountain, identified a 1965 Chevrolet with broken left rear tail light leaving the scene at Ice Service Store Black Mountain, at about 10:30 PM about the same time as the robbery of the store December 10, 1970;

(2) Mrs. Carolyn Sparks, Black Mountain, observed a 1965 Chevrolet with broken left rear tail light in her place of business, a package store two doors from the robbed Ice Service Store on December 10, 1970; and the car made several trips around her building prior to the robbery;

(3) The 1965 Chevrolet was stopped by Deputy Sheriff Charles Medford on I-40 east of I-26 overpass about 12:30 AM December 11, 1970 with Mrs. Louise Owens operating and a man slumped down in the right front seat;

(4) The 1965 Chevrolet has been seen at the trailer, above described, by your affiant since December 10, 1970 and it does have a broken tail light;

(5) Alfred Owens, husband of Louise Owens, told your affiant that Verlon Spillars has been living in the above described trailer for some weeks and that his wife, Mrs. Owens has been staying there also.

s/ C. W. Roland,<br>Affiant

(Sworn to on 12th day of December, 1970)

SEARCH WARRANT:

NORTH CAROLINA
BUNCOMBE COUNTY

To the Sheriff or Other Lawful Officer Empowered to Enforce the Criminal Laws—

GREETINGS:

Whereas Information has been funished me by the affiant named on the attached affidavit (and by the witnesses whose names are listed below), who stated under oath that Verlon Spillars and Louise Sams Owens have property described in the attached affidavit and connected in the manner described in the attached affidavit with the commission of felonious of Robbery, December 10, 1970, further described in the attached affidavit. Such property is located as described in the attached affidavit. Whereas I have examined under oath the affiant and such other witnesses as are named below and am satisfied that there is probable cause to believe that the named person has such property

on the premises of Verlon Spillars, Louise Sams Owens, on their person, and in the vehicle, 1965 Chevrolet, described in the attached affidavit;

You are hereby commanded to search the premises, the 1965 Chevrolet, the persons of Louise Sams Owens, for the property in question. If this property is found seize it and keep it subject to court order. Herein fail not and of this warrant make due return. Search pursuant to the attached affidavit.

ISSUED THIS 12th day of December, 1970 at 1:00 P. M. upon information furnished under oath by the affiant and other witnesses named below:

C. W. Roland
Name of Affiant

Everett Penland
Witness

/s/ (Illegible)
Magistrate, District Court
Buncombe County
28th Judicial District

In addition to the affidavit, this record discloses that the officers also advised the magistrate that they had received $74 from Mrs. Owens (which she had received from defendant), and that Mrs. Owens had told them she would show them where other money was located in the trailer.

[3, 4] It is not necessary that the affidavit contain all the evidence properly presented to the magistrate. *State v. Elder,* 217 N.C. 111, 6 S.E. 2d 840. G.S. 15-26(b) requires only that the affidavit indicate the basis for the finding of probable cause. We do not interpret this portion of the statute to impose a requirement upon the magistrate to transcribe all the evidence before him supporting probable cause. Such an interpretation would impose an undue and unnecessary burden upon the process of law enforcement.

[5, 6] A valid search warrant may be issued on the basis of an affidavit containing information which may not be competent as evidence. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755. The affidavit may be based on hearsay information if the magistrate

is informed of underlying circumstances upon which the informant bases his conclusion as to the whereabouts of the articles and the underlying circumstances upon which the officer concluded that the informant was credible. *Jones v. U. S.*, 362 U.S. 257, 4 L.Ed. 2d 697, 80 S.Ct. 725. Probable cause deals with probabilities which are factual and practical considerations of everyday life upon which reasonable and prudent men may act, *Brinegar v. U. S.*, 338 U.S. 160, 93 L.Ed. 1879, 69 S.Ct. 1302, and if the facts before the magistrate supply "reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender," it is sufficient basis for the issuance of the search warrant. *State v. Vestal, supra.* The magistrate's determination of probable cause should be paid great deference by the reviewing court. *Jones v. U. S., supra.*

[7] Upon application of the above stated principles of law, we conclude that there were sufficient facts before the magistrate to establish probable cause for the issuance of the search warrant.

It is not necessary that we decide whether under G.S. 15-26(b) the affidavit to obtain the search warrant must at all times be attached to the search warrant in order to insure its efficacy.

This record discloses that the affidavit was executed according to the statutory requirements. When the State was called upon to produce the search warrant by defendant's objection, it produced the search warrant *and the affidavit.*

[8] "A search warrant will be presumed regular if irregularity does not appear on the face of the record." Strong, North Carolina Index 2d, Searches and Seizures, § 3, p. 9. *State v. Rhodes,* 233 N.C. 453, 64 S.E. 2d 287; *State v. Elder, supra.*

G.S. 15-27(b) provides: "No search may be regarded as illegal solely because of technical deviations in a search warrant from requirements not constitutionally required."

It is noted that here the search warrant repeatedly refers to the "attached affidavit."

[9]  The only evidence offered by defendant to rebut this pre-sumption of regularity was the statement obtained on cross-examination from Officer Calloway that he did not *see* the affi-davit at the time Officer Roland read and served the search war-rant. Defendant's further cross-examination reveals that Officer Calloway heard Officer Roland read to Mrs. Owens material contained only in the affidavit (reference to the house trailer), which strongly suggests that the affidavit accompanied the search warrant and therefore reinforces the presumption of its regularity.

Defendant did not offer sufficient evidence to rebut the presumption that the search warrant was regular.

We hold that the trial judge properly admitted into evi-dence the seized property under the search warrant and prop-erly allowed into evidence testimony concerning the seized prop-erty.

Defendant contends that the trial judge erred by admitting the search warrant into evidence.

In this connection, the State's evidence shows that on the night of the robbery defendant left his trailer-home with $30 and returned later in the night with at least $388.35. The Ice Service Store, Inc., at Black Mountain lost only $102.75 as a result of the alleged robbery.

Defendant argues that by admission of the search warrant into evidence the prosecution, by hearsay evidence, erroneously (1) offered an explanation as to the discrepancy in the amount of money in defendant's possession by tending to show that it was obtained by robbery of the Ice Service Store at Enka, North Carolina, and (2) allowed Officer Roland to state that he had reasonable cause to believe that defendant had committed another crime.

[10]  The validity of a search warrant, the legality of a search, and the admissibility of evidence obtained by the search are matters of law to be determined by the trial judge. Determina-tion of these questions is not for the jury's consideration. *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65; *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755; *State v. Myers,* 266 N.C. 581, 146 S.E. 2d 674; *State v. Moore,* 240 N.C. 749, 83 S.E. 2d 912.

[11] It is error to allow a search warrant together with the affidavit to obtain search warrant to be introduced into evidence because the statements and allegations contained in the affidavit are hearsay statements which deprive the accused of his rights of confrontation and cross-examination. See *State v. Oakes*, 249 N.C. 282, 106 S.E. 2d 206.

Here, the trial judge erred when he admitted the search warrant and the accompanying affidavit into evidence. We need only to determine if the error was prejudicial.

[12] It is well recognized in this jurisdiction that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent or separate offense. *State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410; *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481; *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839; *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364. We think it appropriate to here note that this Court now holds that even on cross-examination an accused may not, for the purpose of impeachment, be questioned as to whether he has been indicted or arrested for an unrelated crime. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174; *State v. Stimpson*, 279 N.C. 716, 185 S.E. 2d 168.

[13] The record does not affirmatively show that the search warrant and affidavit were exhibited to or read to the jury. We are unable to find specific authority in this jurisdiction stating that the record on appeal must affirmatively show that documentary evidence was read to or exhibited to the jury in order for it to be considered on appeal. However, the preponderance of authority, supported by better reasoning, is that when documentary evidence is regularly admitted, it is presumed that its contents are made known to the jury. 5 C.J.S., Appeal and Error, § 1557, p. 1143; *Illinois Central R. R. Co. v. Swisher*, 61 Ill. App. 611 (1895); *Leary et al. v. New et al.*, 90 Ind. 502 (1883); *Hefling v. Van Zandt*, 162 Ill. 162, 44 N.E. 424 (1896); *Mercantile Trust Co. v. Doe*, 26 Cal. App. 246, 146 P. 692; *Barnard Bus Lines v. Weeks*, 156 Va. 465, 158 S.E. 870 (1931); *McAllister v. City of Frost*, 62 S.W. 2d 232 (1933).

We find the following in Stansbury's North Carolina Evidence 2d § 91, p. 209—Other Offenses as Evidence of the Offense Charged:

Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime.

\* \* \* \* \*

Often, however, the doing of the first act has a logical tendency to prove some relevant fact other than mere character or disposition. When it does, it may be shown by competent evidence.

[14] Here, the evil in the admission of the search warrant and the accompanying affidavit is that the affidavit contains hearsay statements indicating defendant's complicity in another crime without showing that he had been convicted of that crime. Further, the effect of admitting the search warrant and affidavit into evidence was to allow the State to strengthen its case by the use of obviously incompetent evidence.

Under the circumstances of this case we think that the erroneous admission of the search warrant resulted in error prejudicial to defendant.

Defendant assigned as error the court's denial of his motions to strike the testimony of Officer Roland which was offered to corroborate the testimony of witness Owens.

We do not deem it necessary to discuss this and the remaining assignments of error since there must be a new trial. We note, without deciding whether its admission was prejudicial, that there was some variance in the testimony of the two witnesses.

For the reasons stated, there must be a

New trial.